# EXHIBIT A

OPERATING AGREEMENT FOR
VALBELLA AT THE PARK LLC

This Operating Agreement for **Valbella At The Park LLC** (the "**Company**") is made and effective as of the 29th day of April, 2021 (the "**Effective Date**"), by and between **Oak Grove Road, LLC** and **Alpine Pike Investments, LLC** (each a "**Member**" and collectively the "**Members**").

WITNESSETH

**WHEREAS** the Members desire to form a limited liability company pursuant to the Limited Liability Company laws of New York; and

**WHEREAS** the Members hereto desire to adopt this Agreement and be admitted as Members of the Company; and

**WHEREAS,** by execution hereof, each Member represents that it has sufficient right and authority to execute this Agreement and is not acting on behalf of any undisclosed or partially disclosed principal; and

**NOW, THEREFORE,** in consideration of the promises and mutual covenants herein contained, and for other good and valuable consideration, the adequacy and sufficiency of which is hereby acknowledged, the Members hereby agree as follows, effective as of the date first written above:

ARTICLE I
Definitions

The following terms and phrases shall have the meanings indicated:

1. "Act" shall mean the New York Limited Liability Company Act, as amended.

2. "Capital Account" shall mean, with respect to each Member, the account established for each Member pursuant to Article VI, which will initially equal the Capital Contributions of such Members and will be (a) increased by the amount of Net Profits allocated to such Member and (b) reduced by the amount of Net Losses allocated to such Member and the amount of Cash Flow distributed to such Member. Members' Capital Accounts shall be determined and maintained in accordance with the rules of paragraph (b)(2)(iv) of Regulation Section 1.704-1 of the Code.

3. "Capital Contributions" shall mean the fair market value of the amounts contributed by the Members pursuant to Article VI.

4. "Cash Flow" shall have the meaning provided in Article VII.

5. "Code" shall mean the Internal Revenue Code of 1986, as amended, or corresponding provisions of subsequent revenue laws.

6. "Managers" shall mean the Managers selected by the Members in accordance with this Agreement and statute.

1

7. "Members" shall mean the persons designated as such in this Agreement, any successor(s) to their interests as such in the Company; and any other person who pursuant to this Agreement shall become a Member, and any reference to a "Member" shall be to any one of the then Members.

8. "Net Profits" and "Net Losses" shall mean the net profit or net loss, respectively, of the Company determined in accordance with Article VIII.

9. The words "membership interest" shall mean a Member's equity interest in the Company which shall be in proportion to his share of the current profits of the Company determined in accordance with Section 503 of the Act which states that profits and losses shall be allocated on the basis of the value of the contributions of each Member as stated in the Operating Agreement. A "majority in interest of the Members" and "two-thirds in interest of the Members" shall mean Members whose aggregate share of the current profits of the Company constitute more than one-half or two-thirds, respectively, of the aggregate shares of all of the Members.

10. "Company" shall mean this Limited Liability Company.

11. "Person" shall mean any natural person, corporation, partnership, joint venture, association, limited liability company or other business or legal entity.

## ARTICLE II
## Organization of the Company

1. <u>Formation</u>

    a. The Members have caused the Articles of Organization (the "**Articles**") of the Company to be filed in the State of New York. The Articles shall be amended whenever, and within the time periods, required by the Limited Liability Company Laws of New York, or otherwise when approved by the Members.

    b. In order to maintain the Company as a limited liability company under the laws of the State of New York and to qualify the Company to do business in any state, the Managers (as defined below) shall from time to time take appropriate action, including the preparation and filing of such amendments to the Articles and such other assumed name certificates, documents, instruments and publications as may be required by law or as the Managers shall determine, including, without limitation, action to reflect:

        i. qualification to do business in any state in which the Company owns property or conducts business, as the Managers shall determine;

        ii. a change in the Company name;

        iii. a correction of defectively or erroneously executed Articles;

        iv. a correction of false or erroneous statements in the Articles or the desire of the Managers to make a change in any statement therein in order that it shall accurately represent the agreement among the Members; or

        v. a change in the time for dissolution of the Company.

2. Purpose. The purpose of the Company is to conduct any lawful business for which limited liability companies may be organized and to do all things necessary or useful in connection with the foregoing including, but not limited to, operating the restaurant known as "Valbella" located at 3 Bryant Park, New York, New York (the "**Restaurant**") in accordance with the Lease entered into for the Restaurant space, as same may from time to time be amended, modified or extended (the "**Restaurant Lease**").

3. Name. The Company name shall be **VALBELLA AT THE PARK, LLC**. The Members shall be Members in the Company and shall continue to do business under the name until the Managers shall change the name or the Company shall terminate.

4. Address. The principal place of business of the Company is 3 Bryant Park, New York, New York 10036. The Company may locate its places of business at any other place or places as the Members may from time to time elect.

5. Term. The Company shall continue for a perpetual period except that the Company may terminate prior to such date as provided in this Agreement.

## ARTICLE III
## Status of Members

1. Limitation of Liability. No Member will be bound by, or be personally liable for the expenses, liabilities or obligations of the Company.

2. Withdrawals. No Member will be entitled to withdraw any part of its Capital Account or to receive any distributions from the Company except as expressly provided in this Agreement.

3. Sale of Company Assets. Absent the unanimous vote of the Members, no Member will have the right to compel any sale or appraisal of the Company's assets notwithstanding any provision of law to the contrary.

## ARTICLE IV
## Meeting of Members

1. Annual Meeting. An annual meeting of Members shall be held within one (1) year of the close of the fiscal year of the Company on such date and at the time and place (either within or without the State of its organization) as shall be fixed by the Members. At the annual meeting, the Members shall transact such business as may properly be brought before the meeting.

2. Special Meeting. A special meeting of Members may be called at any time by a Manager at the Any such call for a meeting shall be in writing and shall state the purpose or purposes of the proposed meeting. Business transacted at any special meeting of Members shall be confined to the purposes set forth in the notice thereof.

3. Notice of Meeting. Written notice of the time, place and purpose of every meeting of Members (and, if other than an annual meeting, the person or persons at whose discretion the meeting is being called), shall be given by the Managers to each Member of record entitled to vote at such meeting, not less than ten (10) nor more than sixty (60) days prior to the date set for the meeting.

Notice shall be given either personally or by mailing said notice by first class mail to each Member at the address appearing on the record book of the Company or at such other address supplied in writing to the Managers of the Company for the purpose of receiving notice. A written waiver of notice setting forth the purposes of the meeting for which notice is waived, signed by the person or persons entitled to such notice, whether before or after the time of the meeting stated therein, shall be deemed equivalent to the giving of such notice. The attendance by a Member at a meeting either in person or by proxy without protesting the lack of notice thereof shall constitute a waiver of notice of such Member. All notices given with respect to an original meeting shall extend to any and all adjournments thereof and such business as might have been transacted at the original meeting may be transacted at any adjournment thereof; no notice of any adjourned meeting need be given if an announcement of the time and place of the adjourned meeting is made at the original meeting.

4. Quorum. The holders of at least fifty one percent (51%) of the equity interests of the Members present in person or represented by proxy, shall be requisite and shall constitute a quorum at all meetings of members except as otherwise provided by statute or the Articles of Organization. If, however, a quorum shall not be present or represented at any meeting of Members, the Members entitled to vote thereat, present in person or represented by proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present or represented. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally notified. When a quorum is once present to organize a meeting, such quorum is not deemed broken by the subsequent withdrawal of any Members.

5. Voting Rights. Every Member entitled to vote at any meeting shall be entitled to vote in accordance with its membership interest in the Company of record on the date fixed as the record date for said meeting and may so vote in person or by proxy. Any Company action shall be authorized by a majority of the equity interests cast by the Members entitled to vote thereon except as may otherwise be provided by statute, the Articles of Organization or this Operating Agreement.

6. Proxy. Every proxy must be signed by the Member entitled to vote or by his duly authorized attorney-in-fact and shall be valid only if filed with the Managers of the Company prior to the commencement of voting on the matter in regard to which said proxy is to be voted. No proxy shall be valid after the expiration of eleven months from the date of its execution unless otherwise expressly provided in the proxy. Every proxy shall be revocable at the pleasure of the person executing it except as otherwise provided by statute. Unless the proxy by its terms provides for a specific revocation date and except as otherwise provided by statute, revocation of a proxy shall not be effective unless and until such revocation is executed in writing by the Member who executed such proxy and the revocation is filed with the Managers of the Company prior to the voting of the proxy.

7. Presiding Manager. All meetings of Members shall be presided over by at least one Manager, or if not present, by a Member thereby chosen by the Members at the meeting. The Manager or the person presiding at the meeting shall appoint any person present to act as secretary of the meeting.

8. Entitlement to Notice. For the purpose of determining the Members entitled to notice of, or to vote at any meeting of Members or any adjournment thereof or to express consent or dissent from any proposal without a meeting, or for the purpose of determining the Members entitled to

receive payment of any distribution of Cash Flow or the allotment of any rights, or for the purpose of any other action, the Members may fix, in advance, a date as the record date for any such determination of Members. Such date shall not be more than fifty nor less than ten days before the date of any meeting nor more than fifty days prior to any action taken without a meeting, the payment of any distribution of Cash Flow or the allotment of any rights, or any other action. When a determination of Members of record entitled to notice of or to vote at any meeting of embers has been made as provided in this Section, such determination shall apply to any adjournment thereof, unless the Members fix a new record date under this Section for the adjourned date.

9. Holder in Fact. The Company shall be entitled to treat the holder of record of any membership interest as the holder in fact thereof and shall not be bound to recognize any equitable or other claim to or interest in such membership interest on the part of any other person whether or not it shall have express or other notice thereof, except as otherwise provided by the Act.

## ARTICLE V
## Management

1. Managers. The Members shall each appoint a Manager (collectively the "**Managers**") as follows:

    a. Oak Grove Road, LLC hereby appoints David Ghatanfard as Manager (the "**Oak Grove Manager**").

    b. and Alpine Pike Investments, LLC hereby appoints Robert Daleo as Manager (the "**Alpine Pike Manager**").

2. Restaurant Operations. The Oak Grove Manager shall oversee and have the power to direct the operations of the Restaurant (the "**Restaurant Operations**") which include, but are not limited to, the following:

    a. Hiring and, or, terminating Restaurant employees including, but not limited to, wait staff, kitchen staff, coat room staff, and ancillary services including extermination, cleaning, cooking, oil/grease trapping and removal;

    b. Establishing salaries and, or, hourly wages for Restaurant employees and implementing gratuity policies;

    c. Establishing the hours of operation for the Restaurant;

    d. Designing and decorating the Restaurant including, but not limited to, furniture and floral arrangements;

    e. Establishing the Restaurant menu and coordinating with purveyors and procurements;

    f. Maintaining the Restaurant website and social media accounts; and

    g. Maintaining Restaurant security;

    h. Booking all dinner reservations, including special events and parties.

3. Compensation for Restaurant Operations. The Members agree that the Oak Grove Manager, in performing the Restaurant Operations, will have a more encompassing role requiring substantial time and effort. The Members and Managers therefore agree to meet and confer to establish additional compensation for the Oak Grove Manager which includes, but is not limited to:

   a. A salary

   b. A percentage of the Net Profits before distribution to the Members

   c. A Key Man Life Insurance policy with a beneficiary to be determined by the Oak Grove Manager

4. Construction Operations. The Oak Grove Manager shall oversee and have the power to direct the operations of the construction, renovation and alterations of the Restaurant (the "**Construction Operations**") which include, but are not limited to:

   a. Overseeing the Tenant's Initial Work as described in the Restaurant Lease;

   b. Hiring and coordinating general contractors and subcontractors;

   c. Preparing construction invoices, expense reports and Requisitions, as that term is defined in the Restaurant Lease, to be provided to the Restaurant Landlord, 3 BP Property Owner, LLC; and

   d. Controlling any retainage amounts provided for under constructions contracts.

5. Business Operations. The Alpine Pike Manager shall oversee and have the power to direct the operations of the Company's business (the "**Business Operations**") which include, but are not limited to:

   a. Establishing a budget and determining cash management systems, including investment, cash flow and risk management activites;

   b. Hiring accountants and developing systems to maintain the financial books and records of the Company, including control of Accounts Payable and Accounts Receivable, and to file the Company's tax returns and to maintain compliance with employment regulations and all manners of municipal regulations including, but not limited to, quality of life regulations and environmental regulations;

   c. Retaining legal counsel;

   d. Procuring any and all necessary insurance policies for the Company.

   e. Serving as the Tax Matters Member as such term is defined in Code Section 6231(a)(7)

6. Joint Consultation of Managers. Notwithstanding any of the foregoing, the Managers acknowledge and agree that the following areas of Management are deemed critical to the successful operation of the Company and the Restaurant, and therefore require joint consultation of and between the Managers before a final Company determination can be made:

a. Hiring and firing of Company and Restaurant staff, employees and, or professionals;

   b. Establishing compensation, benefits and bonuses of Company and Restaurant staff and employees;

   c. Negotiating and entering into settlements with any third parties;

   d. Negotiation and entering into contracts with any vendors;

   e. Decisions regarding investments and capital outlays;

   f. Drawing down from Company capital.

7. <u>Management of Company</u>. Management of the Company shall be vested in the Managers. Except as otherwise provided in this Agreement, all decisions of the Managers shall be unanimous. Each Manager shall be an agent of the Company for its business purposes and each Manager may bind the Company in the ordinary course provided that the Managers have approved such action in accordance with this Agreement or act. The Managers acknowledge and agree to inform each other, from time to time or upon reasonable request from the one Manager, of decisions and determinations made by the other Manager.

8. <u>Term of Managers</u>. The Managers shall hold office for the term for which elected and until a successor has been elected and qualified.

9. <u>Continuity of Ownership</u>. The Members understand and acknowledge that continuity of ownership and management is important for Business Operations and Restaurant Operations.

   a. In the event of the death or incapacitation of one or both of the Managers, the Managers may be succeeded only by the following Persons (the "**Successor Managers**"):

      i. The Oak Grove Manager shall be succeeded by Rosey Kalayjian

      ii. The Alpine Pike Manager shall be succeeded by Linda Daleo

   b. Notwithstanding the foregoing, Rosey Kalayjian shall not be appointed without the consent of the Alpine Pike Manager or Successor Alpine Pike Manager and Linda Daleo shall not be appointed without the consent of the Oak Grove Manager or Successor Oak Grove Manager. Such consents shall not be unreasonably withheld or delayed.

   c. The Members represent that the governing documents for each Member provides for succession thereof in similar fashion to the Successor Managers set forth above. Specifically, the owner of the Oak Grove Manager shall be succeeded by Rosey Kalayjian and the owner of the Alpine Pike Manager shall be succeeded by Linda Daleo. Each Member undertakes to provide for such succession provisions in their respective Operating Agreements.

Def019

10. <u>Resignation of Manager</u>. Any Manager may resign at any time by giving written notice to the Members. Any such resignation shall take effect at the time specified therein or, if the time is not specified therein, upon the receipt thereof, irrespective of whether any such resignations shall have been accepted.

11. <u>Powers of Managers</u>. The Company shall be managed by the Managers and the conduct of the Company's business shall be controlled and conducted solely and exclusively by the Managers in accordance with this Agreement. In addition to, and not in limitation of, any rights and powers conferred by law or other provisions of this Agreement, the Managers shall have and may exercise on behalf of the Company all powers and rights necessary, proper, convenient or advisable to effectuate and carry out the purposes, business and objectives of the Company, and to maximize Company profits. Such powers shall include, without limitation, the following:

   a. To open accounts and deposit and maintain funds in the name of the Company in banks or savings and loan associations;

   d. To obtain such insurance as is commercially reasonable to protect (shield) the company, its Members, Managers and Employees;

   e. To commence lawsuits and other proceedings;

   f. To execute, acknowledge and deliver any and all instruments to effectuate the foregoing, and to take all such action in connection therewith as the Managers deem necessary or appropriate;

   g. To establish salaries for either or both of the Managers.

Notwithstanding the foregoing, one Manager may not make any of the following management decisions without obtaining the written consent of the other Manager:

   h. To acquire, sell, assign, or otherwise transfer any interest in any property;

   i. To create any indebtedness for borrowed money whether or not secured;

   j. To make, execute or deliver on behalf of the Company any assignment for the benefit of creditors or any guarantee, indemnity bond, or surety bond;

   k. To obligate the Company or any Member as a surety or guarantor to any obligation;

   l. To confess any judgment on behalf of the Company;

   m. To do any act which makes it impossible to carry on the Company's ordinary business;

   n. To obligate the Company in any manner for a liability in excess of $5,000.00.

12. <u>Indemnification by Company</u>. Any Manager, Member or their successors or designees that are made or threatened to be made a party to an action or proceeding, whether civil or criminal, by reason of the fact that he, his testator or intestate, then, is, or was a Manager, Member, or successor or designee of the Company, or then serves or has served on behalf of the company as a Manager, Member, Successor Manager or their designees, shall be indemnified by the Company against reasonable expenses, judgments, fines and amounts actually and necessarily incurred in

connection with the defense of such action or proceeding or in connection with an appeal therein, to the fullest extent permissible by the Act.

13. Silent Member. At any time, and at its sole discretion, Alpine Pike Investments, LLC may elect, upon written notice to Oak Grove Road, LLC, to convert its interests to become a Silent Member (as defined below).

    a. Upon conversion of Alpine Pike Investments LLC's interest to that of a Silent Member, the Alpine Pike Manager shall be disqualified and Alpine Pike Investments, LLC, shall no longer be permitted to appoint a Manager of the Company;

    b. Following the conversion of Alpine Pike Investments, LLC's interest to that of a Silent Member, the Members shall continue to share in the Profits and Losses, as set forth in Article VIII below. As of the date that Alpine Pike Investments, LLC's cumulative, after-tax profits equals or exceeds the total investment that Alpine Pike Investments LLC contributed to the Company, the Members agree to discuss a change in the profit sharing outlined in Article VIII.

    c. For the purposes of this provision, a "Silent Member" shall be defined as a member who has only a "limited" involvement in the Company and the Restaurant daily operations. The Silent Member shall provide advice and counsel to the Company upon request.

    d. It is expressly understood and agreed between the Members that, in the event that Alpine Pike Investments LLC elects to convert its membership interest to that of a Silent Member, such election cannot be nullified, reversed or otherwise voided.

## ARTICLE VI
## Capital

1. Contribution. The Members have contributed to the Company in exchange for their membership interests, as set forth on Schedule A, annexed hereto. The fair market value and the adjusted basis of the contributing Member of any property other than cash contributed to the Company by a Member shall be set forth on Schedule A, annexed hereto.

2. Additional Contribution. Except as expressly provided in this Agreement, no Member shall be required to make any additional contributions to the capital of the Company.

3. Interest. No interest shall be paid on the Capital Account of any Member.

4. Capital Account. A Capital Account shall be established for each Member on the books and records of the Company in accordance with Article I (B). If any assets of the Company are distributed to the Members in kind, the Capital Accounts of the Members shall be adjusted to reflect the difference between the fair market value of such assets on the date of distribution and the basis of the Company in such assets.

## ARTICLE VII
### Distributions of Cash

1. The Company may distribute to the Members from time to time all cash (regardless of the source thereof) of the Company which is not required for the operation or the reasonable working capital requirements of the Company, (such cash is sometimes referred to herein as "Cash Flow"). Distributions of Cash Flow shall be made from time to time in such manner as determined by the Managers and in a manner consistent with the proportion of the equity interests of the Members as set forth in Schedule A.

## ARTICLE VIII
### Profits and Losses

1. Net Profits and Losses. The Net Profits and Net Losses of the Company shall be the net profits and net losses of the Company as determined for Federal income tax purposes.

2. Allocation. The Net Profits and Net Losses of the Company and each item of income, gain, loss, deduction or credit entering into the computation thereof, shall be allocated to the Members in the same proportions that they share in distributions of Cash Flow pursuant to Article VII (above), or if there is no Cash Flow, that they would have shared if there had been Cash Flow.

3. Regulations. References herein to "Reg. Sec", are to the regulations promulgated by the United States Treasury to the Code. The terms "minimum gain", "minimum gain chargeback", "qualified income offset" and "nonrecourse deduction" are to be interpreted consistent with the definitions of such terms in Reg. Sec. 1-704-2. "Nonrecourse liability" means any liability with respect to which no Member bears the risk of loss under Code Section 752. An accountant shall be retained to establish proper bookkeeping and accounting practices.

4. Realization of Gains and Losses. Any Company gain or loss realized with respect to property, other than money contributed to the Company by a Member shall be shared among the Members pursuant to Code section 704(c) and regulations to be promulgated thereunder so as to take account of the difference between the Company basis and the fair market value of the property at the time of the contribution ("built-in gain or loss"). Such built-in gain or loss shall be allocated to the contributing Member upon the disposition of the property.

## ARTICLE IX
### Admission and Withdrawal of a Member

1. Transfer of Interest. A Member may transfer his interest in the Company to another person or entity only with the unanimous consent of the other Member, either in writing or at a meeting called for such purpose. If the other Member does not approve of the transfer, the proposed transferee shall have no right to participate in the management of the business and affairs of the Company or to become a Member.

2. Additional Members. The Managers, upon unanimous written consent and approval, may cause the Company to issue any membership or beneficial interest in the Company and, otherwise, admit any additional Person as a member of the Company for such amount of cash, other property or services and/or subject to such terms and conditions as the Managers shall determine in their sole and absolute discretion, provided only that such Person agrees in writing to be bound by all the provisions of this Agreement.

3. Reallocation of Profits and Losses. If a Member transfers its membership interest (or any portion thereof) in the Company, or if any Person is issued any membership or beneficial interest in the Company and/or is admitted as a "member" of the Company, then the Company's Net Profit and Net Loss shall be allocated between the transferor and transferee (or, as applicable, among the Members) by taking into account their varying interests in the Company during the Company's fiscal year in accordance with the governing tax codes and laws.

4. Additional Documents. The Members agree to sign such additional documents as may be required in order to admit additional Members to the Company, as well as, among other things, to provide for the division of profits, losses and Cash Flow among the Members holding equity interests.

5. Assignment Costs. All costs and expenses incurred by the Company in connection with the assignment of a Member's interest, including any filing fees and publishing costs and the fees and disbursements of counsel, shall be paid by the assigning Member.

6. Ratification of Agreement. Each Person, by becoming a Member, shall and does hereby ratify and agree to be bound by the terms and conditions of this Agreement.

## ARTICLE X
## Termination or Dissolution of Company

1. Dissolution Event. The Company shall be terminated and dissolved upon the first of the following to occur (a "**Dissolution Event**"):

    a. The written consent of the Members holding a majority of the membership interest in the Company; or

    b. The date upon which the Company ceases to own and operate the Restaurant; or

    c. The entry of a decree of judicial dissolution under New York law; or

    d. The death, incapacitation or disqualification of a Successor Manager and the Members have not appointed any subsequent Successor Managers.

2. Continuation. If the Company is dissolved, the owners of a majority in interest of the remaining Members may elect to reconstitute and continue the Company as a successor Company upon the same conditions as are set forth in this Agreement. Any such election to continue the Company will not result in the creation of a new Company among the remaining Members. Notwithstanding the foregoing, such election shall require an amendment of this Agreement reflecting such election.

3. Liquidation. Upon the termination and dissolution of the Company, the then Managers, or any person elected to perform such liquidation by the written consent of the owners of a majority in interest of the Members, shall proceed to the liquidation of the Company. The proceeds of such liquidation shall be applied and distributed as follows:

Def023

a.  If any assets of the Company are to be distributed in kind, such assets shall be distributed on the basis of the fair market value thereof, and any Member entitled to any interest in such assets shall receive such interest therein as a tenant-in-common with all other Members so entitled. The fair market value of such assets shall be determined by an independent appraiser to be selected by the Company's independent public accountants. The amount by which the fair market value of any Property to be distributed in kind to the Members exceeds or is less than the basis of such Property, shall, to the extent not otherwise recognized by the Company, be taken into account in computing Net Profits or Net Losses (and shall be allocated among the Members in accordance with Article VIII for purposes of crediting or charging the Capital Accounts of, and liquidating distributions to, the Members.

b.  All distributions upon liquidation of the Company shall be distributed as follows: to each of the Members, in proportion to the amounts of their respective positive Capital Accounts, as such accounts have been adjusted (i) in accordance with Article VIII, to reflect the Net Profit or Net Loss realized or incurred upon the sale of the Company's property or assets and; (ii) in accordance with Article VIII, to reflect all Net Profits or Net Losses with respect to the year of liquidation. No Member shall be liable to repay the negative amount of his Capital Account.

4.  Dissolution Statement. Each of the Members shall be furnished with a statement, reviewed by the Company's independent public accountants, which shall set forth the assets and liabilities of the Company as of the date of the Company's liquidation. Upon completion of the liquidation, the Managers shall execute and cause to be filed Articles of Dissolution of the Company and any and all other documents necessary with respect to termination of the Company.

## ARTICLE XI
## Books and Reports

1.  Books and Records. The Alpine Pike Manager shall cause the Company to maintain the following records:

    a.  Complete and accurate books of account, in which shall be entered, fully and accurately, each and every transaction of the Company, shall be kept by the Alpine Pike Manager at the principal office of the Company. The fiscal year of the Company shall be the calendar year. The books of account of the Company shall be kept in accordance with sound accounting practices and principles applied in a consistent manner by the Company; provided, however, that all methods of accounting and treating particular transactions shall be in accordance with the methods of accounting employed for Federal income tax purposes.

    b.  A current list of the full name and last known mailing address of each Member set forth in alphabetical order together with the contribution and share in profits and losses of each Member; a copy of the Articles of Organization of the Limited Liability Company and any amendments thereto; a copy of the Limited Liability Company Operating Agreement and any amendments thereto; a copy of the Limited Liability Company's federal, state and local income tax returns for the three most recent fiscal years.

3. <u>Prior Agreements</u>. This Agreement supersedes any and all prior agreements, representations, arrangements and, or understandings, oral and, or, written, between and among the Members and, or the Managers, and any such prior agreements, representations, arrangements and, or understandings shall be deemed null and void upon execution of this Agreement.

4. <u>Exculpation of Members</u>. No Manager or Member shall be liable to the Company or to the other Managers or Members for damages or otherwise with respect to any actions taken or not taken in good faith and reasonably believed by such Manager or Member to be in, or not opposed to, the best interests of the Company, except to the extent that any related loss results from fraud, gross negligence or willful or wanton misconduct on the part of such Manager or Member or the material breach of any obligation under this Agreement or a breach of the fiduciary duties owed to the Company or to the other Members by such Manager or Member.

5. <u>Construction</u>. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted.

6. <u>Authority</u>. This Agreement constitutes a legal, valid and binding agreement of the Members, enforceable against the Members in accordance with its terms. Each of the Members is empowered and duly authorized to enter into this Agreement under every applicable governing documents, operating agreement, trust instrument, pension plan, charter, certificate of incorporation, bylaw provision or the like. The Persons, if any, signing this Agreement on behalf of the Members are empowered and duly authorized to do so by the governing document or trust instrument, pension plan, charter, certificate of incorporation, bylaw provision, board of directors or stockholder resolution or the like.

7. <u>Severability</u>. This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations of the jurisdiction in which the Company does business. If any provision of this Agreement, or the application thereof to any person or circumstance, shall for any reason and to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of that provision to other persons or circumstances shall not be affected, but rather shall be enforced to the extent permitted by law.

8. <u>Property of Company</u>. Anything hereinbefore in this Agreement to the contrary notwithstanding, all references to the Property of the Company are deemed to include the profits, losses and Cash Flow of the Property.

9. <u>Governing Law</u>. Irrespective of the place of execution or performance, this Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed in the State of New York.

10. <u>Captions</u>. The captions, headings and table of contents in this Agreement are solely for convenience of reference and shall not affect its interpretation.

11. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which shall be deemed to constitute a single document. A PDF, fax or electronic signature shall be deemed an original signature solely for the purposes of this Agreement.

12. <u>Tenses and Gender of Words</u>. All terms and words used in this Agreement, regardless of the tense or gender in which they are used, shall be deemed to include each other tense and gender unless the context requires otherwise.

13. <u>Binding Upon Successors</u>. Subject to paragraph "14" of this Article, this Agreement shall be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns, and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and permitted assigns. This Agreement shall become effective upon its execution and delivery by the Members.

14. <u>Rights of Third Parties</u>. None of the provisions of this Agreement shall be construed as having been made for the benefit of any creditor of either the Company, the Member, nor shall any of such provisions be enforceable (except as otherwise provided by law) by any Person not a party hereto.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement effective as of the day and year first above written:

**OAK GROVE ROAD, LLC**

By: David Ghatanfard
Its: Member

**ALPINE PIKE INVESTMENTS, LLC**

Robert D. Daleo (Apr 27, 2021 16:18 EDT)
By: Robert Daleo
Its: Member

SCHEDULE "A"
Valbella At The Park LLC
Member Information

| Name & Address of Member | Capital Contribution | Percentage Membership Interest |
|---|---|---|
| Oak Grove Road LLC<br>56 Oak Grove Road<br>Southampton, New York 11968 | $ | 50% (Fifty Percent) |
| Alpine Pike Investments LLC<br>19 Pike Street<br>Alpine, New Jersey 07620 | $ | 50% (Fifty Percent) |
| TOTAL | $ | 100% (One Hundred Percent) |

Def028