N97CzivC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   PAVLE ZIVKOVIC,

4              Plaintiff,

5        v.                              22 Civ. 7344 (GHW)
                                         Telephone Conference
6   VALBELLA AT THE PARK, LLC,

7              Defendant.

8   ------------------------------x
                                         New York, N.Y.
9                                        September 7, 2023
                                         4:00 p.m.
10
    Before:
11
                    HON. GREGORY H. WOODS,
12
                                         District Judge
13
                         APPEARANCES
14
    JOSEPH & KIRSCHENBAUM LLP
15       Attorneys for Plaintiff
    BY:  YOSEF NUSSBAUM
16       LUCAS C. BUZZARD

17  BAKER & HOSTETLER LLP
         Attorneys for Defendant
18  BY:  MICHAEL S. GORDON
         MAXIMILLIAN S. SHIFRIN
19

20

21

22

23

24

25

N97CzivC

| | |
|---|---|
| 1 | (The Court and all parties appearing telephonically) |
| 2 | THE COURT:  I'm going to begin by taking appearances |
| 3 | from the parties.  If there's more than one lawyer on the line |
| 4 | for any party, I'd ask that party to have the principal |
| 5 | spokesperson identify him or herself and the members of their |
| 6 | team rather than having each lawyer identify themself |
| 7 | individually. |
| 8 | Let me start, if I can, with the plaintiff.  Who's on |
| 9 | the line for plaintiff? |
| 10 | MR. NUSSBAUM:  Good afternoon, your Honor.  Yosef |
| 11 | Nussbaum and Lucas Buzzard for the plaintiff. |
| 12 | THE COURT:  Thank you. |
| 13 | And who's on the line for defendant? |
| 14 | MR. GORDON:  Good afternoon, your Honor.  This is |
| 15 | Michael Gordon from Baker Hostetler.  With me is Maximillian |
| 16 | Shifrin on behalf of the defendant. |
| 17 | THE COURT:  Good.  Thank you. |
| 18 | So what I'd like to do is begin with some brief |
| 19 | instructions about the rules that I'd like the parties to |
| 20 | follow during this conference. |
| 21 | At the outset, please remember this is a public |
| 22 | proceeding.  Any member of the public or press is welcome to |
| 23 | dial into this call, I am not monitoring whether they are, but |
| 24 | I ask you to keep that possibility in mind. |
| 25 | Second, please state your name each time that you |

N97CzivC

1    speak.

2              Third, please keep your lines on mute at all times

3    except when you are intentionally speaking to me or to the

4    representative of a party.

5              Fourth, please abide by instructions from our court

6    reporter that are designed to help the court reporter do his

7    job.

8              Finally, I'm ordering that there be no recording or

9    rebroadcast of all or any portion of today's conference.

10             So counsel, with all of that out of the way, let's

11   turn to the substance of today's proceeding.  This is a

12   conference to discuss what appears to be a request to modify

13   the discovery schedule in the case prompted by the withdrawal

14   of Mr. Seeman as counsel for defendant here and the arrival of

15   new counsel.

16             So, what I'd like to do is just to hear from each of

17   the parties about your respective positions.

18             Before I do that, I just want to raise a brief

19   threshold question.  There are issues raised in your letters

20   about Mr. Sipas.  I believe that Mr. Sipas was also represented

21   by Mr. Seeman.  At least he represented the entity, if I recall

22   correctly.

23             I just want to hear whether Mr. Seeman, to the

24   parties' knowledge, is representing Mr. Sipas or any other

25   person from whom discovery is being sought here.  I ask insofar

N97CzivC

| 1 | as it may be relevant to the request for me to order the |
| 2 | deposition of Mr. Sipas by a date certain. |
| 3 | Counsel for plaintiff. |
| 4 | MR. NUSSBAUM:  Thank you, your Honor.  Yosef Nussbaum |
| 5 | for plaintiff. |
| 6 | Our understanding is that Mr. Seeman continues to |
| 7 | represent Mr. Pent air and Mr. Sipas. |
| 8 | Mr. Seeman has just indicated to us yesterday that |
| 9 | he's going to be substituted as counsel for 10Tier, but at the |
| 10 | same time, he earlier informed us that Mr. Sipas is available |
| 11 | to be deposed on September 19th, which would work for us. |
| 12 | THE COURT:  Thank you, good.  So I appreciate that. |
| 13 | Do I take from that, counsel, that -- |
| 14 | MR. GORDON:  Your Honor. |
| 15 | THE COURT:  Yes. |
| 16 | MR. GORDON:  Sorry.  This is Michael Gordon for |
| 17 | defendant. |
| 18 | My understanding about Mr. Sipas and 10Tier is |
| 19 | substantially similar to Mr. Nussbaum for plaintiff.  Although, |
| 20 | I have been told that a new attorney is coming in.  I've not |
| 21 | spoken to that attorney.  I don't know that Mr. Seeman could |
| 22 | agree to a deposition date for someone else coming in, |
| 23 | especially if they're just coming in.  I think the new |
| 24 | attorney's name is Harrington. |
| 25 | THE COURT:  Thank you.  I take no position on that. |

N97CzivC

1          The principal reason why I ask is to determine whether
2     or not this is an issue for me to resolve here.  Counsel for
3     plaintiff, is the issue of the schedule for Mr. Sipas'
4     deposition something that the Court needs to resolve here, is
5     there an agreed upon date and subpoena for that agreed upon
6     date already issued?

7          MR. NUSSBAUM:  Yosef Nussbaum for plaintiffs.

8          We would ask for the Court resolve this by way of
9     setting a firm deadline by which the deposition would have to
10    take place as the Court has earlier done in July.  Mr. Seeman
11    did tell us a date Mr. Sipas was available, but that date
12    hasn't been confirmed between us and 10Tier or Mr. Sipas.  We
13    believe the easiest way to do this is just to have a date by
14    which the deposition must take place.

15         THE COURT:  Thank you.

16         Mr. Seeman isn't present on the line here.

17         Mr. Seeman, are you on the line?

18         (Pause)

19         Since Mr. Seeman isn't on the line, I'm not likely to,
20    without his feedback, set a specific date for the deposition of
21    his client.  Let's take this up in the frame of the remainder
22    of discovery issues that we need to discuss here.

23         Let me hear first from counsel for plaintiff.  What's
24    your position regarding need for an extension of time?  I'm
25    particularly interested in your views regarding defendants'

N97CzivC

1    position regarding the appropriate schedule for them to provide

2    responses to outstanding discovery requests separate from the

3    requests to extend their deadline to complete discovery for

4    120 days.  What's your view regarding their proposal for the

5    timeline for production of responsive materials?

6              MR. NUSSBAUM:  Yosef Nussbaum for plaintiffs.

7              We believe defendant is clouding the issue here.  In

8    this case, the Court already ordered OGR — Oak Grove Road — to

9    produce the specific documents.  Defendants' proposal, as we

10   read it, is they would now object to certain requests for

11   documents that we propounded and then produced things at a

12   later date.  That would be going backwards here.  There's a

13   clear order in July or June 30th, I believe, from the Court

14   specifying exactly what Oak Grove Road should be producing.

15   There's no need to go backward.

16             So literally, with VATP, with Valbella at the Park, we

17   served document demands.  Valbella at the Park blew the

18   deadline to produce those document demands and that's why we

19   have to seek an extension of the discovery deadline.  And then

20   thereafter, in two letters to the Court, Valbella at the Park's

21   counsel represented that they were going to substantively

22   respond, produce the documents that we had sought in the

23   document requests.  Now the new counsel for Valbella at the

24   Park, as we read their proposal, would be going backwards and

25   asking that they first now serve objections and then later

N97CzivC

1    serve responses.  That's not what Seeman and Valbella at the

2    Park represents to the Court in June and July in this case.

3            So, in terms of a proposal, we would ask the Court set

4    a date certain.  As we put it in our letter, VATP's responses

5    were past due multiple times.  We would ask the Court, whatever

6    the Court deems reasonable, if it's a week or two weeks, that

7    Valbella at the Park finally produce all the responsive

8    documents to the request.  And similarly with Oak Grove Road,

9    the Court originally only gave Oak Grove Road I believe three

10   weeks to respond, and at the time that Mr. Seeman (technical

11   interruption) there were 11 days left in those three weeks.  If

12   Baker Hostetler needs three weeks to respond to those requests,

13   that's fine, but we don't want to go backwards where they now

14   think they can object to documents that the Court already

15   ordered them to produce.

16           THE COURT:  Thank you.

17           And just for my sake, were there objections filed to

18   the requests previously, counsel for plaintiff?

19           MR. NUSSBAUM:  There were no formal requests.  The

20   Court had an order to show cause hearing on June 30th, and at

21   that hearing, the Court went through the specific requests with

22   counsel for Oak Grove Road and addressed any objections that

23   they had.

24           THE COURT:  Good.  Thank you.

25           Let me hear from counsel for defendant.  Is counsel

N97CzivC

1    for plaintiff construing your proposal properly?

2            MR. GORDON:  This is Michael Gordon, counsel for

3    defendant.

4            I believe there is a misconstrual here.  This is not

5    about responses or objections, this is about a timeline.  What

6    we had proposed, and I don't recall anywhere in our letter in

7    any of our discussions with plaintiff's counsel talking about

8    objections and responses, we're aware that this Court has

9    issued a couple of orders with respect to discovery and we have

10   every intention of abiding by those orders.

11           We also have just come into this case and are still

12   trying to get our arms around OGR's documents.  Just for

13   purposes of clarity, Oak Grove Road I'll refer to as OGR and

14   Valbella at the Park I'll refer to as VATP.  We're getting our

15   arms around both sets of document requests.

16           I would also point out that in the 2017 action, which

17   is the related action before your Honor, in the interest of

18   judicial and litigation efficiency, we agreed to respond to

19   information subpoenas and document questions against VATP and

20   OGR, both of whom are nonparties in that action.

21           Our proposal was merely to streamline discovery

22   because both the discovery requests in this action and those

23   that we agreed to accept in response to the 2017 action are

24   overlapped significantly.  And we felt or at least the

25   agreement we tried to reach, that we do this on the same

N97CzivC

timeline and a timeline that works for us, that we begin a

rolling production of documents based upon the fact that,

again, documents are still trickling in from our predecessor

counsel, we're still getting documents from the client.  So

what we wanted to do was run discovery or coordinate discovery

in both litigations in a way that would avoid duplication and

bolster efficiency.

THE COURT:  Good.  Thank you.  Understood.  So I

appreciate that.

The proposal then is that the rolling production will

begin on the 15th and be completed by the 28th; is that right?

MR. GORDON:  Well, plaintiffs would like the rolling

production to be completed by the 28th.  I mean, we could -- I

think what the plan was, was for the rolling -- yeah, I guess

we said we would endeavor to complete the rolling production by

the 28th.  I mean, given -- as things are mounting, I think a

little more time than that would be helpful.  I think every

time a request for an extension is sought, there's a lot of

push back from plaintiffs.  We understand that.  We know that

they've been in the case since -- at least in the prior action

since 2017.  This action was commenced in 2022.  So we

understand their impatience.  What they need to understand is

that we are still getting our arms around a massive record and

want to do right by our client.

Ideally, if we could respond to the document requests

1  and information subpoena questions in both actions by the 22nd

2  and then commence a rolling production on the 28th, that would

3  be great.  And then the Court had requested that there be a

4  status -- a joint status update on October 3rd, and I would

5  recommend that that be followed.  And then in that status

6  update, we would be in a better position to advise the Court as

7  to what remains to be produced.

8          And apologies, I just wanted to respond to something

9  that I mentioned earlier --

10         THE COURT:  I'm sorry.  Just to be clear.  In your

11  letter, you refer to the agreement, which would be:  "Will

12  endeavor to complete their rolling production."

13         Now, counsel, I understand you to be proposing that

14  you not endeavor to complete the rolling production by the

15  28th, but you will begin the rolling production on the 28th.

16  Did I understand your remarks properly?

17         MR. GORDON:  Honestly, because we are just beginning

18  to address that, ideally, we would like to begin our rolling

19  production prior to the 28th.  My concern was -- I may have

20  misspoken.  Our intention -- we don't know that we will be able

21  to finish our production by the 28th.

22         THE COURT:  Thank you.

23         MR. NUSSBAUM:  Your Honor, may I be heard --

24         MR. GORDON:  Ideally, we would start the production

25  before the 28th.

N97CzivC

| 1 | THE COURT:  Thank you. |

2          And by when do you anticipate that you will be able to

3    complete the production?

4          MR. GORDON:  Hopefully within the first couple of

5    weeks in October.

6          THE COURT:  Thank you.  Good.  Understood.

7          Yes, counsel for plaintiff, go ahead, I'll hear from

8    you.

9          MR. NUSSBAUM:  Thank you, your Honor.  Yosef Nussbaum

10   for plaintiff.

11         I think Mr. Gordon is confusing things here.  The

12   discovery that's due in this case, in the second case, I'll

13   call it, the 2022 case, is the response to three -- I believe

14   it was three or four document requests relating to email

15   accounts that was due in May, and then that was represented to

16   the Court it would be produced in June and July.  The discovery

17   that VATP owes us in the first case, in the 2017 case, is a

18   completely different set of information.  There's really no

19   reason to tether the two to each other, especially considering

20   that in this case, the 2022 case, there was a discovery

21   deadline and we would like to finish discovery, versus in the

22   earlier case, there is no discovery deadline, we're in

23   post-judgment collection.

24         In this case, to be clear, there were really just

25   email records that we were seeking, and other than that, we

N97CzivC

1    didn't want anything else from Valbella at the Park and we were

2    okay with discovery closing.  And Oak Road is a little bit of a

3    different story, but for Valbella at the Park, that's all that

4    they owed us right now, so there's really no reason to tether

5    the two to each other.  Those documents were due in May, they

6    represented would be produced in June and July.  We really

7    cannot understand why at this point they should be getting any

8    more time than two weeks to produce them, even if they're new

9    in the case, they should be where we were when we left things.

10            THE COURT:  Good.  Thank you.

11            Counsel for defendant, let me just ask you, if you'd

12   like to comment on that.  Counsel suggests that you're

13   conflating the outstanding discovery in the two matters.  Is

14   your concern applicable to the limited discovery that

15   plaintiffs assert that they are seeking in this case?

16            MR. GORDON:  Yes.  This is Michael Gordon for

17   defendant.

18            Make no mistake, this case is basically part and

19   parcel of defendants' judgment enforcement endeavor in the 2017

20   action.  Their attempt to prove or to demonstrate that Valbella

21   at the Park is the successor interest to Valbella Midtown, is

22   part of their attempt to collect their judgment.  And they're

23   asking the same types of questions in furtherance of that

24   undertaking.

25            Now, the limited discovery that remains of Valbella at

N97CzivC

1    the Park -- or that is addressed to Valbella at the Park in

2    this action pertains, to a certain extent, to the grand opening

3    of the restaurant, who was invited, and it requires a term

4    search on our clients' computers.  We hope that that can be

5    done expeditiously, but we're not certain.  And at this moment,

6    we don't know how long that will take.

7              I also want to point out that with respect to VATP,

8    there was never any order that we were not allowed to object to

9    certain discovery requests, it was only with respect to OGR,

10   that OGR was directed to respond to a set of document requests

11   and that the Court pruned at the June 30th conference.

12             THE COURT:  Fine.  Thank you.

13             So let's turn to the second issue.  I'll hear first

14   from counsel for defendant about the request by VATP for

15   additional discovery.  Why is that needed here given the nature

16   of the claims at issue in this case?

17             MR. GORDON:  Your Honor, when we were retained in this

18   case and we examined -- suffice it to say, we did not expect to

19   be taking this position, but when we looked at the record in

20   this case, we were quite surprised that there wasn't any

21   discovery taken by predecessor counsel of the core issue, i.e.,

22   whether Valbella at the Park is a successor in interest to

23   Valbella Midtown.

24             As outlined in our letter, there were document

25   requests seeking plaintiff's personal information, three

N97CzivC

1    boilerplate interrogatories, and absolutely no discovery of

2    successor liability.  And we believe that if we were to head

3    into summary judgment or trial on this record, Valbella at the

4    Park would be materially prejudiced because they have not had

5    an opportunity to take any discovery of plaintiff's position on

6    these issues.  Plaintiff has taken discovery on the issues,

7    plaintiff has taken depositions, but plaintiff has focused on

8    those issues that plaintiff believes will bolster successor

9    liability claims or allegations.  There are a myriad of other

10   issues that have not been examined or considered that we feel

11   must be considered in order for VATP to be able to defend

12   itself in a meaningful fashion.  And we endeavored to limit

13   what we were seeking to requests for production, contention

14   interrogatories, requests for admission, plaintiff's deposition

15   and, most importantly expert discovery.

16           And I can address any and all of those if the Court

17   wishes me to do so.

18           THE COURT:  Thank you.

19           Yes, I will invite that.

20           First off, let me just ask about the underlying issue.

21   Your predecessor chose not to take discovery on this topic,

22   namely whether or not defendant is a successor.  Why would you

23   have me conclude that that was not a reasonable and reasoned

24   approach, given that, arguably, information about whether or

25   not your client is a successor is information within your

1    possession, custody, and control and not that of plaintiff?

2              MR. GORDON:  Because plaintiff made allegations in its

3    complaint, a number of which were inaccurate.  Plaintiff worked

4    at the alleged predecessor restaurant and has knowledge, unique

5    knowledge of the operations of that restaurant.  Plaintiff also

6    has information that it has collected from other sources as to

7    the bases for its successor liability claim.

8              So, I mean, the way that I -- again, you know, my

9    predecessor chose to conduct discovery in a certain fashion.  I

10   cannot -- I can't reconcile what was done by my predecessor

11   with VATP's need to defend itself in connection with these

12   allegations, and I think that plaintiff does have information

13   that we do not have.

14             Particularly, they have been taking -- they presumably

15   did due diligence before they filed their complaint.

16   Presumably, that due diligence was perhaps taken with the

17   assistance of an investigator, I don't know, but we've seen

18   sort of a piecemeal or hodgepodge collection of different areas

19   of inquiry that appear to be directed toward bolstering their

20   successor liability case and we feel that it would streamline

21   summary judgment to be able to propound requests for

22   production, contention interrogatories and requests for

23   admission to ask plaintiffs to clarify these issues for summary

24   judgment to narrow the issues in dispute.  It's very possible

25   that the parties agree on certain aspects of this dispute.  So

N97CzivC

1    I think it would be in the interests of litigation efficiency

2    as well as fairness to do so.

3           And on the expert front, that, we believe, is

4    critically necessary because at the center of the successor

5    liability question are issues that only an expert can speak to,

6    such as, you know, our expert would demonstrate that Valbella

7    at the Park, the concept of that restaurant is different from

8    Valbella Midtown in a myriad of ways.

9           I won't bore the Court with the details of that, but

10   it has to do with items such as food and the menu, the

11   ambiance, the service, the demographics, something called

12   psychographics, which is a study in classification of people

13   who come to eat at restaurants, the size of the restaurants,

14   alternative income streams.  The current Valbella at the Park

15   has a private catering, Valbella Midtown did not have that.

16   There are ample bases for distinguishing the two restaurants --

17           THE COURT:  I'm sorry, counsel.  Just out of

18   curiosity, what, if any (indiscernible crosstalk) have anything

19   to do with alterego or successor liabilities?  Assume it was an

20   Italian restaurant and then they take all of their operations,

21   personnel, money, equipment and turn it into a Japanese

22   restaurant?  It seems to me that you're suggesting that the

23   type of restaurant that it is has some impact on the assessment

24   of whether or not it's the successor, as a matter of successor

25   liability, what's the legal basis for that?

N97CzivC

1          MR. GORDON:  The legal basis for that is the *de facto*

2     merger test and also the mere continuation test.  Both tests

3     focus on a number of factors.  Continuity of ownership, whether

4     all or substantially all of the assets are transferred to the

5     successor corporation.  But the core component of both tests is

6     whether the new business is a continuation of the same

7     business --

8          THE COURT:  Thank you.  Understood.

9          Counsel, let me just ask you to keep on reading those

10    factors and I'll ask you to tell me how the type of restaurant

11    it is affects those things.  How does it affect whether the

12    assets are the same?

13         MR. GORDON:  It does not.  The only component, and the

14    most important component, the type of restaurant effect is what

15    I'll call the continuation prong of both tests, which looks at

16    physical location, operations, concept, you know, is this

17    business the same business as the predecessor.  And because we

18    believe that the other component, which do not require an

19    expert, fall in our favor.  We feel that the scale will

20    undoubtedly be tipped when we demonstrate that the new

21    restaurant is a completely different entity in terms of

22    continuity of management, personnel, physical location and,

23    most importantly, operations.  At the core of that, as I said,

24    is the concept issue.

25         THE COURT:  What kind of expert are you anticipating

N97CzivC

1    retaining for purposes of opining on this concept question?

2                MR. GORDON:  We've interviewed and we've narrowed down

3    our choice to two experts, and both of these experts -- well,

4    one that we picked has 30 to 40 years of expertise in the

5    restaurant industry, teaches about these issues at culinary

6    institutes, and has served as an expert in other litigations

7    involving similar issues, perhaps not in the identical context

8    whether one entity violated a non-compete by starting a similar

9    restaurant, but looked at these myriad elements, particularly

10    in the concept context to demonstrate that one restaurant was

11    not a continuation of or based on the prior restaurant.

12                This is something that the fact finder needs to be

13    framed by an expert because absent this type of analysis, the

14    ordinary fact finder is not going to really be able to address

15    the elements that go into concept.  It is, from what we've

16    seen, a science.  I mean, I'll tell you, before I got involved

17    in this case, I might not have thought that a restaurant

18    concept was something that warranted expert discovery, but as I

19    dived in this, I've seen that this is precisely the domain of

20    an expert.  If we had spoken to experts and they said, nah,

21    this is not really appropriate for expert discovery, we would

22    not have pursued it, but this is a very lively undertaking and

23    there are experts out there who repeatedly have spoken to these

24    issues in cases like this.

25                THE COURT:  Thank you.

N97CzivC

1          You referred to the kinds of factual issues that you'd

2     like to pursue and any incremental fact discovery.  To what

3     extent does the discovery that you would like to take from

4     plaintiff inform the expert evaluation of the issue that you're

5     describing?

6          MR. GORDON:  The discovery for plaintiff really

7     focuses on the bases for plaintiff's successor liability

8     theory.  Typically, in a case like this or in any federal case,

9     I would serve contention interrogatories and the requests for

10    admission prior to summary judgment to understand, based on the

11    record, what plaintiff's position is with respect to these

12    issues.  All we have now are depositions and letters and

13    whatnot.  There's no streamlined instrument that contains their

14    theory, and that's because they've never been asked to provide

15    such an explanation.

16         So, there may be facts -- further to that, there may

17    be factual components to the expert analysis such as, you know,

18    to the extent, kindly provide us a document to demonstrate that

19    this restaurant is the same restaurant, that the menu is the

20    same.  I mean, they're basing this on information that they've

21    collected and we've, you know, all that we've seen in the

22    rather modest document production is we've seen a lot of social

23    media material and a couple of copies of the menu and they're

24    now focusing on the logo and the person who designed the

25    website.

N97CzivC

1          And the issue of successor liability goes

2     significantly beyond those issues.  I think -- I mean, that

3     plaintiffs are following a roadmap, that they followed, their

4     counsel followed in another case were issues of logo and

5     advertising were of greater import.  What's being ignored here

6     and what deeply concerns us is that the concept issue, it had

7     been completely disregarded and we would like the opportunity

8     to develop the record on that and have an expert speak to this

9     issue, which is a specialized issue, that only someone with

10    expertise in restaurant management can speak to.

11          THE COURT:  Good.  Thank you.

12          So let meet turn to counsel for plaintiff.

13          How do you respond?

14          MR. NUSSBAUM:  Thank you, your Honor.  Yosef Nussbaum

15    for plaintiff.

16          There's a lot to respond to that, I'll try to keep it

17    short.

18          It's clear that counsel for defendant just wants to

19    take this case backward.  He mentioned a few times "concept"

20    and as a detail concept, "menu."  The record in this case is

21    clear because defendant produced their current menu, we

22    produced a menu from Valbella Midtown, and more than 80 percent

23    of the items on the Valbella Midtown menu show up on the new

24    restaurant's menu with a precise description.  I know the Court

25    doesn't want us to litigate the merits of the case right now,

N97CzivC

1    but it's quite disingenuous at this point in the case, after

2    10 months of discovery, nearly 10 months of discovery, to say

3    that, you know, we want to find information about the concept

4    of the restaurant or whether it tracks the menu of the earlier

5    location — that's just ignoring the record of what's happened

6    here.

7            And they were, you know, they were free to do whatever

8    they wanted when it came to discussing the concept of -- of the

9    restaurant, you know, prior counsel.  You know, it's clear

10   logged, incoming lawyers take the case as they inherit it, and

11   they don't get to do a do-over.  Mr. Seeman didn't make a

12   mistake here.  He understood that all the facts lie with his

13   client.  Our client, who is admittedly out of the country, has

14   not worked at the restaurant just really doesn't have much to

15   say again.  Counsel for Valbella at the Park is going backward,

16   asking what the basis of the allegations in our complaint are —

17   that, again, ignores almost 10 months of discovery, which have

18   done a very good job -- where we have done a very good job of

19   showing that this tremendous overlap in ownership, such as the

20   name of the restaurant, the food at the restaurant, the

21   employees.

22           We have, in discovery, subpoenaed the employee

23   identities from the earlier restaurant and of the new

24   restaurant, and there are significant crossovers.  Almost the

25   entire kitchen staff was transferred from the earlier

N97CzivC

1    restaurant to the later restaurant.  And again, that's

2    information that wasn't in our control, that was always in

3    Valbella at the Park and Mr. Seeman, prior counsel's control.

4         We would urge the Court to not let defendant take this

5    case backward after almost a year, nearly 10 months of

6    discovery, especially when all information was in their

7    possession.

8         And the last thing, in the case management plan,

9    again, they inherit the case as they come in.  Mr. Seeman

10   indicated that expert discovery was not applicable.  I think in

11   the five or ten-minute explanation of what the expert's going

12   to do here, I think the Court is able to hear through it and

13   understand that there really isn't an expert that could testify

14   to the issues that we're talking about in this case under the

15   alterego and mere continuation tests.

16        THE COURT:  Thank you.

17        Let me hear from you, counsel for plaintiff, about --

18        MR. GORDON:  Your Honor, may I respond to that,

19   because I -- this is Michael Gordon for defendant.

20        THE COURT:  Please hold your thought.  I'm happy to

21   give you the chance to respond, but let me just ask a couple of

22   brief questions as followup.  Please do hold your thoughts and

23   I'm happy to let you respond.

24        First, counsel for plaintiff, can I ask you to remark

25   on one part of counsel for defendant's comments.  He said that,

1    in essence, he would be promulgating a contention

2    interrogatories and requests for admission as a way to sharpen

3    the case for presentation for motions for summary judgment.  I

4    understand your position is that they take the case as they've

5    inherited it, but I'd like to ask you to comment on that

6    remark.  And I ask because granting them leave to conduct that

7    kind of narrow written discovery might be an alternative that I

8    could grant short of providing them with the full scope of the

9    relief that they're requesting.  I know that that's neither

10   side's proposal now.  I would just like to hear your position

11   on that comment by counsel for defendant.

12            MR. NUSSBAUM:  Yosef Nussbaum for plaintiffs.

13            Initially, it's difficult to respond without knowing

14   specifically what they're asking for, especially because

15   contention interrogatories aren't allowed under the local

16   rules.  And again, that would highlight how this will only take

17   us further back and they would have to tell us what the

18   interrogatories are, we would likely only object to them.  And

19   then, you know, the requests for contention interrogatories and

20   requests to admit, as I mentioned earlier, just ignore the 9 or

21   10 months of discovery in this case.  I don't know -- I haven't

22   heard a specific issue from counsel for defendant that would be

23   sharpened by a request to admit.  There's a clear documentary

24   record, there's a clear deposition record our client didn't

25   work at the second restaurant.  The record is where it is.  To

N97CzivC

1    ask our client what he knows about certain things, it's

2    possible the answer will be that he doesn't know, but Valbella

3    at the Park's 30(b)(6) witness told us the answer to that

4    question.  So it doesn't really follow that that -- that

5    contention interrogatories and requests to admit are going to

6    get us anywhere here.

7                THE COURT:  Good.  Thank you.

8                Let me turn back to counsel for defendants.

9                Counsel, please go ahead with your response.

10               MR. GORDON:  Yeah, I wouldn't expect plaintiff to

11   suggest that this discovery would be helpful and advance the

12   case because plaintiff has merely advanced the case in the

13   manner that it saw fit in terms of focusing on the elements

14   that are most helpful to its case.  The concept or continuation

15   component of expert analysis, there are a myriad of differences

16   between the two restaurants.  For example, current restaurant

17   is 18,000 feet, the prior restaurant was 5,000 feet.  The

18   current restaurant has concept rooms like a bourbon room and a

19   wine room, which the prior restaurant didn't have.  The prior

20   restaurant was basically a lunchtime venue, the current

21   restaurant is actually a destination restaurant.  The

22   demographics -- the type of people attracted by both

23   restaurants are radically different.  And we have data and we

24   have information that perhaps predecessor counsel didn't think

25   about, but that should -- I mean, part of the reason why

1    predecessor counsel withdrew from the case was due to a

2    breakdown in communication with his client.

3            And so, yes, I understand that there's case law that

4    provides that an incoming attorney takes the case as it is, but

5    I would also call to the Court's attention that plaintiff's

6    first case that they rely on, the Hyce v. Lemon case, which is

7    a far less complicated case than this one.  In that case, the

8    court gave incoming counsel an additional six months of

9    discovery because the predecessor counsel failed to take

10   discovery on core issues in the case.

11           So, all we're really asking is an opportunity to be

12   able to develop these issues, which I think will benefit --

13   more to the Court's benefit because it will allow us to

14   streamline and identify issues for discovery.  As plaintiff

15   says, the menus overlap.  Now, my understanding is completely

16   different, that the menu is quite different.  For example,

17   Valbella at the Park has a sushi chef, which Valbella Midtown

18   never had.  There are a myriad of items on the menu that didn't

19   exist at Valbella Midtown.  And I don't mean to litigate the

20   facts, but I'm aware -- we're aware of ample distinctions, and

21   the fact that this wasn't in the record prejudices our client.

22           And I would also point out that plaintiff had gotten

23   the opportunity to take multiple bites at the same apple.  If

24   plaintiff is taking redundant discovery in both cases of the

25   same party and in a world according to plaintiff, their

N97CzivC

1   position is, well, we can take as much duplicative, redundant

2   discovery of Valbella at the Park and of OGR, but you guys are

3   not specialized to take any discovery with respect to the core

4   issue in the case.  And again, we respect the fact that

5   discovery -- that there was a discovery timetable.

6   Respectfully, I think 10 months is very short in the lifespan

7   of a Southern District case, and I don't think an additional

8   few months is going to prejudice anyone.  We realize plaintiffs

9   want to get to the finish line very quickly for tactical

10   reasons, but that would be inequitable for Valbella at the

11   Park.  And Valbella at the Park should at least have an

12   opportunity to level the proverbial playing field rather than

13   being forced into summary judgment without having an

14   opportunity to put its best foot forward on these issues.

15          MR. NUSSBAUM:  Your Honor, may I be heard for

16   plaintiffs briefly?

17          THE COURT:  Thank you.  Please, go ahead.

18          MR. NUSSBAUM:  Yosef Nussbaum for plaintiff.

19          Firstly, counsel's reference to the Hyce case is quite

20   a shocking misrepresentation.  It's cited in our letter that

21   the case was decided on June 24th, 2021.  And that court

22   allowed for additional discovery, but only to August 9., which

23   is roughly six weeks.  I don't know where counsel is getting

24   six months of fact discovery from.

25          Leaving that aside, back to the expert issue.  The

N97CzivC

1    issues counsel highlights are issues that they'll be able to

2    put before the Court as facts on summary judgment and before a

3    jury.  If summary judgment doesn't go, one of the sides waives.

4    These are not issues that we hire experts to help us out with

5    to opine on.  It's just very clear if they want to tell us

6    about the concept, if they want to tell the Court or a jury how

7    many seats there are that there's a sushi chef, like, we're not

8    stopping them, but we just don't need an expert to help move

9    that process along.

10          THE COURT:  Very good.  Thank you.  Thank you very

11    much.

12          MR. GORDON:  Can I respond to plaintiff's, what I

13    believe is a misstatement about the Hyce case?

14          THE COURT:  Yes --

15          MR. GORDON:  Yes, fact discovery was extended by

16    54 days, the remaining four and a half months or five and a

17    half months was devoted to expert discovery.  And I think that

18    one of the problems here is that plaintiff is conflating fact

19    and expert discovery.  And even the Court's case management

20    plan allows 120 days for fact discovery, and that additional 45

21    days for expert discovery after fact discovery had been

22    completed.

23          So the Hyce case, since we're asking for both fact and

24    expert discovery, the Hyce case reflects records where both

25    were completed within a six-month period.  And I also don't

N97CzivC

1    believe plaintiff is in a position to speak to whether an

2    expert is needed when plaintiff hasn't looked into this.

3    Plaintiffs counsel, to the best of my understanding, hasn't

4    looked into this issue.  We have, and we would not be advancing

5    the concept of an expert if we didn't think it was a good

6    faith -- there was a good faith bona fide basis for an expert

7    to speak to these issues and that the expert would assist the

8    fact finder.

9               THE COURT:  Thank you.  Good.

10              So let me just resolve these issues.

11              First, with respect to the deadline for VATP and OGR

12   to complete their productions, I understand that the request by

13   the defendant is that written responses will be due on the 15th

14   with a rolling production first endeavored to be completed by

15   September 28th.  Now the request is that it be completed by

16   sometime in the first couple of weeks of October.  I appreciate

17   that.  Plaintiff had suggested that September 22 is the date

18   that the Court should set as the deadline for that information

19   to be provided.

20              First, given the nature of the outstanding discovery

21   requests in this case and given that they are long overdue, I

22   think that some amount of time, additional amount of time is

23   warranted in order to permit defendants to complete their

24   production of those materials.  I'm going to order that the

25   production of the materials be completed no later than

N97CzivC

```
1    October 6.  Actually, I can make it October 9.  October 9.  The

2    written responses will be due on the 15th, the rolling

3    production should begin as promptly as practicable, but, in any

4    event, must be completed no later than October 9.

5              With respect to the deposition of Mr. Sipas, I'm not

6    going to take a position here.  I will extend the deadline for

7    completion of fact discovery solely to permit the completion of

8    production of that discovery and also the deposition of

9    Mr. Sipas, I expect that there will be a subpoena.  And to the

10   extent there's any noncompliance issue, it will be brought to

11   my attention and at that time, I'll take up the issue.

12             Now, I'm not going to grant the requested extension of

13   the discovery period requested by defendants here.  The parties

14   are well aware of the basic principles that govern my decision

15   here.  I'm not going to spend a lot of time restating the legal

16   standard with which the parties are well familiar.  I'll just

17   note that the Court had established, pursuant to Rule 16, a

18   clear set of deadlines for completion of discovery.  The

19   defendants were capably represented, they engaged in the

20   creation of the scheduling order, which was entered by the

21   Court and was later extended.

22             The rules say a number of things that are relevant.

23             First, the schedule may be modified only for good

24   cause and with the Court's consent as stated in Rule 16 before.

25   Significantly also, Federal Rule of Civil Procedure
```

N97CzivC

26(b)(2)(C)(ii) states that the Court, in sum, must limit

discovery, the scope of discovery where "the party seeking

discovery has had ample opportunity to obtain the information

by discovery in the action."

First, I don't find good cause for modification of the

type requested here for completion of discovery by defendant.

The parties are familiar with the case law.  Here, it's

embodied in the decision by the Western District of New York in

*Carlson v. Geneva City School Dist.*, 277 F.R.D. 90, 95

(W.D.N.Y. 2011) where the Court said:  "A delay attributed to a

change in counsel does not constitute good cause because new

counsel is "bound by the actions of their predecessor.""

Again, from *Carlson* 277 F.R.D. 95, which in turn is quoting

*Glover v. Jones*, 2006 WL 3207506 at *4 (W.D.N.Y. 2006).  As the

Court in *Carlson* said:  "Nor does a mistake or oversight by

counsel excuse the delay."  Id.

Here, the reason for the requested extension of time

is really prompted by fact that defendants have retained new

counsel, that does not constitute good cause.  In my view, I

appreciate the arguments presented about the new light in which

incoming counsel sees the case, but the parties understand the

slippery slope issues that would come to bear were courts, and

particularly in this case, to permit the recommencement of

discovery whenever new incoming lawyer had a new or clever idea

about how to present or conduct litigation in a case.

N97CzivC

1          Here, I appreciate the arguments that are represented

2     here, but I don't understand there to be an error on the part

3     of Mr. Seeman or any other fundamental unfairness that needs to

4     be rectified by modifying the schedule.  So I think that the

5     basic rule should apply and that the change of counsel should

6     not be considered by the Court to constitute good cause.

7          Moreover, under Rule 26(b)(2)(C)(ii), I believe that I

8     should limit the scope of discovery to that which I've already

9     stated I will permit.  That's because given the extended period

10    of time for completion of discovery in this relatively

11    straightforward case, I believe that the parties here, the

12    defendants have had ample opportunity to obtain the information

13    by discovery in the action.  Again, the party, that is the

14    defendants are bound by the actions of their predecessor, their

15    agent.  The party had ample opportunity to obtain information

16    by discovery in the action.  The fact that they did not take

17    full benefit of the opportunity, as counsel for defendant now

18    argues, does not change my assessment of the fact that they did

19    have ample opportunity to do so.  Their choice not to take

20    advantage of that opportunity does not lead me to the

21    conclusion that they did not have ample opportunity to obtain

22    the information they did.

23          I note that in reaching this conclusion here that the

24    basic issue in the case is of successor liability.  As counsel

25    for defendant articulated, most of the facts related to whether

N97CzivC

1    or not an entity is a successor or of another is really

2    information that is in the hands of the purported successor

3    entity and perhaps its predecessor.  Here, the requested

4    discovery from plaintiffs I don't believe to be so significant

5    in nature that there's a fundamental unfairness that I need to

6    address upon modifying the schedule or deviating from what I'll

7    describe as the basic rule under Rule 26(b)(2)(C)(ii), that I

8    must limit the scope of discovery where parties had ample

9    opportunity to obtain the information by discovery in the

10   action.  As both lawyers said, incoming counsel generally

11   accepts the case as they find it.  That is the case here.

12        So the request to open the discovery schedule in a

13   plenary manner is denied.  I do not find good cause to modify

14   the existing case management schedule and order.  To permit

15   that modification under Rule 16, and not all cases in this

16   district take years and years, large cases do, but this is not

17   that kind of a case, this is a relatively discrete one.  As a

18   result, I believe they've had ample opportunity to obtain the

19   information by discovery in the action and that I must

20   therefore limit the discovery under Rule 26.

21        I will enter an order extending discovery for the

22   limited purposes that I noted earlier, namely to permit

23   defendants to respond to the outstanding discovery request

24   within the timeframe that I've described and within which I

25   expect plaintiff will conduct the deposition of Mr. Sipas.

N97CzivC

1    Again, I am not ordering a particular date for that deposition

2    to take place as Mr. Sipas is not represented here.  To the

3    extent that there's any issue of noncompliance with a subpoena

4    regarding that deposition, the issue can be brought to the

5    Court's attention in compliance with my individual rules of

6    practice.

7              So I think that's it.

8              Anything else that we need to take up before we

9    adjourn?  Let me start with counsel for plaintiff.

10             MR. NUSSBAUM:  Thank you.  Nothing for plaintiff, your

11   Honor.

12             THE COURT:  Thank you.

13             Counsel for defendant.

14             MR. GORDON:  Nothing further, your Honor.

15             THE COURT:  Thank you, all, very much.  This

16   proceeding is adjourned.

17                              * * *

18

19

20

21

22

23

24

25